UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| JAMES D. DUNCAN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:20-CV-338-PLR-HBG |
| | ) | | |
| ANDERSON COUNTY, TENNESSEE, | ) | | |
| DEPUTY PARTEN, SGT. | ) | | |
| ROBERTSON, | ) | | |
| CORP. MORRIS, and CAPTAIN | ) | | |
| VOWELL, | ) | | |
| | ) | | |
| Defendants. | | | |

## MEMORANDUM & ORDER

The Court is in receipt of a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 2] and related motion for leave to proceed *in forma pauperis* [Doc. 1]. The Court will address Plaintiff's motion prior to screening the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

### I.  MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion to proceed *in forma pauperis* that he lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

Because Plaintiff is an inmate in the Anderson County Detention Facility, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the

filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, and to the Attorney General for the State of Tennessee. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

## II. SCREENING

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff, an inmate at the Anderson County Detention Facility ("ACDF"), was housed in the "Honor Pod" in Unit 5 until January or February 2020, when he was moved to Unit 1 [Doc. 2 p. 2]. After his move to Unit 1, Plaintiff was hired as a first-shirt pod worker, which required him to perform duties such as serving meals and cleaning the unit [*Id*.]. In exchange for his duties, Plaintiff received "2 for 1" sentencing credits [*Id*.].

In March 2020, Plaintiff was asleep when Deputy Parten, along with two other officers, entered his cell and ordered him to be seated in the dayroom while a search of the unit was conducted [*Id*.]. Approximately thirty minutes later, the deputies returned [*Id*.]. At that time, Deputy Parten told Plaintiff to pack his belongings to be moved, as Plaintiff was being "booked" for possessing extra clothing and linens [*Id*. at 2-3]. Plaintiff explained to Deputy Parten that he was allowed to possess extra clothing and linens as a shift worker, but Deputy Parten told Plaintiff that he "didn't care" [*Id*. at 3]. As a result of the disciplinary infraction, Plaintiff was fired from

his inmate job, reclassified to a different compound at ACDF, and placed in lock-down "23/1" [*Id*.].

Plaintiff contends that he was fired and placed in segregation before any disciplinary hearing was held, and he complains that when the hearing was held, he was found guilty without being advised of his right to call witnesses in his defense [*Id*.].

Plaintiff maintains that on July 28, 2020, the facility suspended inmates' ability to file grievances on the facility's kiosk "because of grievances involving illegal opening" of inmates' mail [*Id*.]. Plaintiff alleges that on July 23, 2020, he was called to a Sergeant's office, where he was advised that some of his legal mail had been opened [*Id*. at 4]. Plaintiff was advised that the mail was not addressed correctly, and that it was opened and inspected for staples before the officer opening the mail noticed it was legal mail [*Id*.]. Plaintiff was further advised that the officer removed the contraband staples, and that the mail was placed back in the envelope without being read [*Id*.]. Plaintiff accepted the mail and returned to his cell, though he disputes that the mail was incorrectly addressed [*Id*.]. Plaintiff maintains that this mail was sent to him by "elbow counsel" and contained "strategy of evidence and witnesses" in another pro se § 1983 suit [*Id*.].

Thereafter, Plaintiff filed the instant suit seeking declaratory, injunctive, and monetary relief for Defendants' alleged wrongdoings [*Id*. at 5].

**B.    SCREENING STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§

3

1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### C. ANALYSIS

#### 1. Transfer within ACDF

To the extent Plaintiff claims that he had a due process right to remained housed in Unit 5, the Court notes that placement of prisoners is a matter left to the discretion of state officials, and a prisoner has no constitutional right or protected liberty interest to be housed in any particular facility or unit. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Montanye v. Haymes*, 427

U.S. 236, 242 (1976). Therefore, Plaintiff's dissatisfaction with his intra-facility transfer fails to state a constitutional claim, and this claim will be **DISMISSED**.

### 2. Participation in Programs

Next, the Court addresses Plaintiff's complaint that he was improperly fired from his prison job and lost his ability to earn extra sentencing credits. To state a cognizable constitutional claim for the denial of programs, Plaintiff must demonstrate that his interest in the program is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). However, prisoners possess no constitutional right to such educational, vocational, or rehabilitative privileges. *See, e.g., Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (holding "a prisoner does not have a constitutional right to prison employment or a particular prison job"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). Therefore, Plaintiff has failed to state a constitutional violation for the loss of his prison job, and this claim will be **DISMISSED**.

### 3. Suspension of Grievances

Third, to the extent Plaintiff complains that the facility improperly suspended the filing of grievances on its kiosk system, the Court notes that inmates have no constitutional right to a grievance procedure. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, any alleged infirmities the grievance procedure fails to raise a viable constitutional issue, and it will be **DISMISSED**.

### 4. Disciplinary Charges

Plaintiff asserts that he was improperly charged with a disciplinary infraction, that he was not advised of his right to have witnesses testify in his defense, and that he lost the ability to earn sentencing credits as a result.

The Supreme Court has held that certain requirements of procedural process must be met before a State can forfeit an inmate's good-time credit. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). One of these requirements is that the inmate possesses the right to call witnesses when doing so "would not be unduly hazardous to institutional safety or correctional goals". *Id.* at 566-67. Therefore, it is not an absolute right; it is a limited one that requires a balance of interests. Here, Plaintiff does not allege that witnesses were excluded without proper consideration of institutional safety or goals. Rather, he alleges only he was not affirmatively advised of his right to call such witnesses. Such an allegation fails to state a constitutional claim.

The Court otherwise notes that Plaintiff does not allege that officials took away some of his credits as a result of the disciplinary charge. Rather, he lost his job, which impacted his ability to earn future credits. There is no right under constitutional or Tennessee law to earn sentencing credits. *See Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992); Tenn. Code Ann. § 41-21-236(a)(2). Accordingly, this allegation fails to state a constitutional claim.

Moreover, inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff*, 418 U.S. at 564-71. This is true even if the charge later turns out to be unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against

an inmate does not constitution a constitutional violation redressable under § 1983."). Therefore, none of the allegations related to Plaintiff's disciplinary offense/hearing state a claim, and this claim will be **DISMISSED**.

### 5. Legal Mail

Plaintiff alleges that his privileged legal mail was opened outside of his presence, which has made officials privy of strategies Plaintiff is pursuing in his lawsuit against them in another case pending.

A prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003). Recognizing the need to balance the prison's needs for security and safety against the prisoner's countervailing legal rights, the prison officials can open "legal mail" and inspect it for contraband in the prisoner's presence, *Wolff*, 418 U.S. at 576-77, "if such a request" to be present "has been made by the prisoner." *Sallier*, 343 F.3d at 874. In *Wolff*, the Supreme Court commented:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id.* at 576-77 (emphasis in original).

Here, Plaintiff does not allege that he had previously requested that mail be opened in his presence. Moreover, he admits that he was called to an office where it was explained to him that the mail was mistakenly opened because it was not properly addressed. Additionally, Plaintiff does not provide details about what the mail contained other than stating it was advice from "elbow counsel" in another lawsuit. Moreover, Plaintiff has failed to demonstrate that he was in any way

7

prejudiced by the (apparent) one-time mistaken opening of his legal mail. Therefore, the Court finds this allegation fails to state a First Amendment claim. It will be **DISMISSED**.

### 6. Retaliation

Finally, the Court notes that Plaintiff appears to allege that he was moved to a different pod, fired from his job, and that his legal mail has been opened in retaliation for his prior lawsuit against Anderson County. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, the Court finds Plaintiff's allegations of Defendants' retaliatory motives wholly conclusory and insufficient to state a claim under § 1983 for retaliation. *See, e.g., Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). Therefore, this claim will be **DISMISSED**.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5. Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**